**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **J.B. B/N/F KIMBERLY BEASON** | § | |
| **AND SCOTT BEASON, *individually*** | § | |
| ***Plaintiffs*** | § | |
| **v.** | § | **CIVIL ACTION NO. 4:18-cv-244** |
| | § | |
| **KLEIN INDEPENDENT** | § | |
| **SCHOOL DISTRICT,** | § | |
| ***Defendant*** | § | |

**FIRST ORIGINAL COMPLAINT**

J.B. ("J.B." or "Student") by and through her next friend and legal guardians Kimberly Beason and Scott Beason (collectively "Plaintiffs" herein) files this *First Original Complaint* alleging that the Klein Independent School District (hereinafter referred to as "KISD" or the "School District") violated the various rights of the Student, as more specifically pled herein. Plaintiffs reserve the right to re-plead if new claims and issues arise upon further development of the facts, as permitted by law. In support thereof, Plaintiffs would respectfully show this tribunal the following:

## I. BRIEF INTRODUCTION TO THE CASE

1. J.B. Beason is now 14 years old.

2. While a student at KISD, J.B. was bullied and harassed incessantly by male students. The bullying began when J.B. was in third grade. The male bullies told her things such as "[y]ou're a fat, stupid, ugly, bitch", called her a freak, and told her no one wanted to be friends with her.

3. J.B.'s mother, Kim Beason, first reported the bullying and harassment when J.B. was in fourth grade. Instead of dealing with the students participating in the bullying, KISD responded

by removing J.B. from her class and placing her in a classroom with the students who were learning English as a second language and the gifted and talented students (ESL/GT classroom). Basically, KISD responded to the bullying and harassment by punishing her—the victim of the bullying.

4. As a result of the extensive bullying and harassment J.B. suffered while at KISD, she developed severe emotional anxiety, which cause J.B. to suffer from irritable bowel syndrome (IBS), as well as depression and insomnia. J.B. has trouble trusting people and making eye contact with people while talking.

5. In addition, due to the bullying and harassment, J.B. was unable to return to school, and her last day at KISD was February 26, 2017.

6. There is not a week that goes by where there is not some media story about the plight of a young person who is bullied, harassed, assaulted, or even sexually assaulted at their school. Frankly, it is a national epidemic. Unlike the task of containing the spread of a flu virus by means of vaccines and treatment, this type of epidemic is particularly difficult to treat because often the school district itself, as in J.B.'s situation, is part of the illness and refuses to recognize its own responsibility. KISD's failure is troublesome because they were on notice as to the horrible bullying and harassment J.B. experienced and did nothing about it.

7. For the families there is nothing worse than seeing their own child suffer. To give meaning to their child's experience, they feel compelled to tell their story. They feel a duty to do so in the hope the presentation of their story will prevent the same from happening to another family. In the course of this telling, these victims benefit from a healing effect. The healing and empowering effect is even more pronounced when the story is told before a neutral tribunal, as Plaintiffs have chosen to do in her case, so that the bright light and sanitizing effect of federal

law and the tribunal's gaze is focused on this important issue and the School District's failures.

## II. JURISDICTION

8. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §1331 and 1343 because the matters in controversy arise under the laws of the United States.

9. J.B. is a citizen of the State of Texas, and was at all pertinent times a student in the Klein Independent School District.

10. During the relevant time-period in this cause, and upon which this complaint is based, J.B. was a student attending Hildebrandt Intermediary in Klein Independent School District.

## III. VENUE

1. Under 28 U.S.C. §1391, venue is proper before this Court because the events and omissions giving rise to the Plaintiffs' claims occurred in the Southern District of Texas, Houston Division.

## IV. PARTIES

11. J.B. lives with her mother--Kimberly Beason, her father—Scott Beason, and her brother at 25010 Pikecrest; Spring, Texas 77389. They live within the Klein Independent School District catchment area.

12. Klein Independent School District is a school district organized under the laws of the State of Texas. At all times pertinent to this case, J.B. was a student at the Klein Independent School District. They may be served by and through their Superintendent, Dr. Bret A. Champion 7200 Spring Cypress Road; Klein, Texas 77379. Plaintiffs reasonably believe that service will be waived by Defendant's attorney of record, Ms. Amy C. Tucker, Rogers, Morris & Grover, L.L.P., 5718 Westheimer Road, #1200; Houston, Texas 77057.

## V. STATEMENT OF FACTS

### A. ABOUT J.B.

13. J.B. was born on May 29, 2003. During a significant period that makes the basis of this complaint she was a student at Hildebrandt Intermediary in Klein Independent School District.

14. While a student at KISD, J.B. was bullied and harassed incessantly by male students. The bullying began in or about 2011 when J.B. was in third grade. J.B. told her teacher, Ms. Grant, about the bullying and harassment, but it did not stop.

15. In or about 2012, when J.B. was in fourth grade, the bullying and harassment continued. One boy in particular, C.E., was the main instigator of the bullying and harassment. C.E. and his friends told her things such as "[y]ou're a fat, stupid, ugly, bitch". Ms. Beason made calls and sent emails to teachers and principals at the school, but the bullying and harassment did not stop. In addition, Ms. Beason spoke with the principal, Ms. McKetta, who assured her the situation would be handled. In addition, Ms. Beason and J.B. spoke with the counselor, Ms. Johnson, who was well-aware of the ongoing bullying and harassment—in fact, Ms. Beason begged Ms. Johnson to speak with C.E. to determine why he was acting so aggressively towards females. But the bullying and harassment continued.

16. During fourth grade, C.E. became physically aggressive toward J.B.—once pushing her off the monkey bars. Another time, C.E. slammed J.B.'s head against the gym wall, and the school nurse called Ms. Beason at home to report the incident.

17. One of day when J.B. was in fourth grade, a friend of Ms. Beason's told her that she witnessed the bullies purposefully make J.B. cry and give each other high-fives after succeeding. That day, Mr. Beason drove the school and reported the incident to the principal, Ms. Castille, who promised that KISD would keep J.B. safe. Again, the bullying and harassment continued.

18.     In 2013, J.B. started fifth grade, and KISD responded to the previous year's bullying and harassment by removing J.B. from her class and placing her in a classroom with the students who were learning English as a second language and the gifted and talented students (ESL/GT classroom). J.B. was not an ESL student, nor in the GT program. During this time, J.B. began to change emotionally. She was becoming very quiet and withdrawn. She did not want to go school, and her grades dropped. J.B.'s parents told her teacher Ms. Schweitzer, about C.E. and the bullying and harassment, and Ms. Schweitzer attempted to keep C.E. away from J.B., but C.E. would see J.B. at recess, after school, and at lunch, and he would not miss a chance to bully and harass her.

19.     One day in fifth grade, C.E. pushed J.B. to the ground after school and caused her to cry and bleed. Mr. Beason immediately reported the incident to the principal, Ms. Castille, who assured the family that it would be taken care of. But the next day, Ms. Beason called the school and was told that there was nothing the school could do about the situation and advised Ms. Beason to contact the KISD police department, which she did. C.E. left J.B. alone for a short time, but then began bullying and harassing her with increased intensity. By this time, other children at school would not speak to J.B.

20.     In 2014, J.B. began sixth grade, and Ms. Beason immediately spoke with the school counselor about C.E. and the bullying and harassment who told Ms. Beason that several other teachers turned in reports regarding C.E. and bullying and harassment, and that she intended to speak to C.E.'s parents. Again, the family was promised that J.B. would be kept safe.

21.     In sixth grade, the bullying and harassment continued. C.E. continued to call J.B. names such as "freak" and "fat" and "ugly". Ms. Beason reported the bullying and harassment to Ms. Barton, who said that the situation would be handled. But the bullying and harassment continued.

22. In fact, that year, C.E. pushed J.B. down the stairs. Ms. Beason called the school the following day about the incident, but there was no report or investigation.

23. In 2015, before J.B. began seventh grade, Ms. Beason met with the school counselor to make sure that C.E. would not be in any of J.B.'s classes. But the bullying and harassment continued. One day at lunch, C.E. and another boy, A.C., began bullying and harassing J.B. to the point where she screamed at them to leave her alone. Due to the incident, J.B., C.E., and A.C. were sent to the principal's, Ms. Marti's, office. Ms. Marti called Ms. Beason and told her that J.B. screamed at lunch. After getting additional details from J.B. regarding the incident, Ms. Beason called Ms. Marti to tell her what actually happened to cause J.B. to scream. But the bullying and harassment continued.

24. One day in seventh grade, the bullies told J.B. that her dad left her mother and her because J.B. was so ugly. In response, J.B. threw a napkin at the boy, and was sent to Ms. Marti's office yet again and punished and made to sit in a different area at lunch. None of the kids would sit with her due to fear of being bullied and harassed and because J.B. had become so emotional by this time.

25. In 2016, J.B. began eighth grade, J.B. decided to try out for the cheerleading squad, and she made the team. Ms. Beason alerted the cheerleading sponsors about the bullying and harassment by C.E., but it continued.

26. C.E. continued to call J.B. names and pull her hair, and he would sit directly in front of her at games when she would cheer. Both J.B. and her mother verbally reported a hair pulling incident by C.E. to Ms. Marti. In addition, Ms. Beason sent to Ms. Marti an email about the incident. But the bullying and harassment continued.

27. By this time, J.B. was having physical symptoms associated with the anxiety caused by

the bullying and harassment. She was separating herself from her peers and isolating. J.B. began to become ill quite often—first, she contracted strep throat, then influenza, and then she began having stomach pains.

28. Mr. and Ms. Beason began taking J.B. to talk therapy, and the therapist diagnosed J. B. with social anxiety and suggested J.B. not return to school. Mr. and Ms. Beason provided to the school a letter explaining J.B.'s anxiety.

29. Before J.B.'s eighth grade year ended, Ms. Beason met with the school counselor, Ms. Bollato, and told her about J.B. and the bullying and harassment. Ms. Bollato told Ms. Beason that it would be hard to keep C.E. away from J.B., even if Ms. Beason procured a restraining order, and that someone with J.B.'s issues should go to school somewhere else.

30. Thereafter, Mr. and Ms. Beason enrolled J.B. in another school, where J.B. is making progress and is happier. However, she still suffers from social anxiety and physical symptoms due to the anxiety caused by the bullying and harassment.

## B. THE SCHOOL DISTRICT WAS ON NOTICE THAT J.B. WAS THE VICTIM OF BULLYING AND HARASSMENT.

31. J.B.'s mother, Kim Beason, first reported the bullying when J.B. was in or about 2012 when J.B. was in fourth grade to school personnel, including but not limited to Ms. Castille and Ms. Johnson. Thereafter, Ms. Beason and Mr. Beason reported the bullying numerous times, including as set forth above. KISD did not respond appropriately to the bullying and harassment, and it simply continued.

32. In or about March 2017, under the recommendation of J.B.'s physician and therapist, J.B.'s mother requested that KISD place J.B. on "homebound status". However, KISD initially rejected this request.

33. In or about May 2017, KISD finally approved J.B.'s homebound status; however, KISD forced J.B. to redo the work for the entire school year, despite the fact that J.B. had attended school for approximately half the school year before being unable to attend due to the bullying and harassment she experienced.

**C.   J.B.'S BEHAVIOR CHANGES**

34. As a result of the extensive bullying J.B. suffered while at KISD, she developed severe emotional anxiety, which caused J.B. to suffer from irritable bowel syndrome (IBS), as well as depression and insomnia. J.B. has trouble trusting people and making eye contact with people while talking.

35. J.B. was prescribed anti-anxiety/anti-depression medication. In addition, J.B. regularly sees a talk therapist and a physician for her gastrointestinal issues.

36. Due to her IBS symptoms, J.B. has gone to the emergency room three times since November 2016.

37. Due to the bullying, J.B. was unable to return to school, and her last day at KISD was February 26, 2017.

38. As a female student, J.B. has a right to be educated in a non-hostile educational environment. Those rights are further protected by directives from the United States Department of Education, *Office of Civil Rights.* Moreover, and most importantly, KISD has also developed policies and procedures to protect a student--like J.B.--from such bullying and harassment. Those policies gave her and her parents a number of substantive rights.

39. Such rights include but are not limited to, first and foremost, the right to receive notice of their procedural rights, which were never provided.

40. Nor did Plaintiffs ever receive notice of who the Title IX for KISD, in regard to

investigating allegations of the bullying and harassment of a student who belongs to a protected class.

41. KISD never provided information about Plaintiffs' right to file a formal grievance with the School District.

42. KISD never provided the family information about their right to file a formal complaint with the Office of Civil Rights.

43. KISD did not even follow their own policies and procedures requiring allegations of bullying be investigated by the appropriate staff member.

44. KISD failed to timely investigate the allegations of bullying and harassment as contemplated by Title IX jurisdiction and KISD's own policies.

45. KISD never provided a psychological assessment.

46. KISD never provided school-based counseling services.

47. KISD never provided an aide or shadow to observe J.B. at the school.

48. KISD never provided J.B. a class or program on social skills so she would know how to deal with the bullying.

49. KISD was clearly indifferent to the rights of J.B. to be educated in a safe and non-hostile educational environment.

50. KISD also failed to provide J.B. any services to address the effects of the bullying and harassment she experienced, and were indifferent to her rights, thereby.

## VI. CLAIMS FOR RELIEF PURSUANT TO TITLE IX

51. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

52. Title IX specifically notes the standards of liability for a public entity in regard to the

Title IX claim. The claimant must be a member of a protected class; must be bullied, harassed or assaulted based upon membership in that class; the Defendant entity must be on notice as to the allegations; be deliberately indifferent to those allegations and the victim must have experienced a deprivation of educational opportunities and/or other damages. J.B. easily satisfies all those threshold requirements.

53. Plaintiffs further contend that these failures of the Defendant School District to have effective policies, procedures, practices and customs in place to assure J.B. was not a victim of bullying, harassment, or assault based upon gender, or based upon stereotypes based upon gender, and due to such failures violated her rights pursuant to Title IX of the Education Amendments of 1972 (Title IX), 86 Stat. 373, as amended, 20 U.S.C. §1681 et seq., upon which she now seeks recovery.

54. Last, J.B. has a private cause of action against the School District for their violation of the rules and regulations promulgated pursuant to Title IX.

## VIII. <u>RATIFICATION</u>

55. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

56. KISD ratified the acts, omissions, and customs of school district personnel and staff.

57. As a result, KISD is responsible for the acts and omissions of staff persons who were otherwise responsible for the safety of J.B.

## IX. <u>PROXIMATE CAUSE</u>

58. Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if herein set forth.

59. Each and every, all and singular of the foregoing acts and omissions, on the part of KISD,

taken separately and/or collectively, jointly and severally, constitute a direct and proximate cause of the injuries and damages set forth herein.

## X. SPOLIATION

60. Plaintiffs hereby require and demand that KISD preserve and maintain all evidence pertaining to any claim or defense related to the assault or other violations made the bases of this Complaint and request for due process or the damages resulting therefrom, including statements, photographs, videotapes, audiotapes, surveillance, security tapes, business or medical records, incident reports, telephone records, emails, text messages, electronic data/information, and any other evidence regarding the assault or other violations set forth herein.

61. Failure to maintain such items will constitute "spoliation" of evidence, which will necessitate use of the spoliation interference rule—an inference or presumption that any negligent or intentional destruction of evidence was done because the evidence was unfavorable to the spoliator's case.

## XI. DAMAGES

62. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

63. As a direct and proximate result of KISD's conduct, J.B. suffered injuries and damages, for which she is entitled to recover herein including but not limited to:

a. Loss of educational opportunities in the past;

b. Loss of educational opportunities in the future;

c. Physical pain in the past;

d. Physical pain in the future;

e. Medical expenses in the past;

f. Medical expenses in the future;

g. Mental anguish in the past;

h. Mental anguish in the future; and

64. Various out-of-pocket expenses incurred due to the acts and omissions of KISD.

## XII. PRAYER

Plaintiffs pray for judgment against KISD in the manner and particulars noted above, and in an amount sufficient to fully compensate them for the elements of damages enumerated above, judgment for damages, recovery of attorneys' fees and costs for the preparation and trial of this cause of action, and for its appeal if required, pursuant to Title IX and 42 U.S.C. §2000d et seq., together with pre- and post-judgment interest, and court costs expended herein, as well as the equitable issues noted above; and for such other relief as this Court in equity, deems just and proper and for such other relief as the Court may deem just and proper in law or in equity.

Respectfully submitted,

*/s/ Martin J. Cirkiel*
Martin J. Cirkiel, Esq.
State Bar No.: 00783829
Federal ID No. 21488
marty@cirkielaw.com

Holly Terrell, Esq., Of Counsel
State Bar No. 24050691
Federal ID No. 1034278
holly@cirkielaw.com

Cirkiel & Associates, P.C.
1901 E. Palm Valley Boulevard
Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]

**ATTORNEYS FOR PLAINTIFF**